Mr. Stuchin Good morning, your honors. May it please the court and counsel. For over half a century, Bruton recognized that the scenario of a co-defendant confession which facially implicates a defendant in a joint trial without an opportunity for cross-examination was so highly prejudicial that jurors could not be relied upon to follow limiting instructions to apply the statement only against the declarant. Judge Goldberg That only applies to testimonial statements, doesn't it? That's what every one of our circuits that have considered the issue has held. The Bruton rule applies only if the statements are testimonial. Judge Stuchin That's correct. However, Crawford did not explicitly overrule Bruton and I think given the opportunity to reconsider Bruton, the harm which was sought to be remedied in Bruton has nothing to do and is unaffected by considerations of whether the co-defendant's confession was testimonial or non-testimonial. Bruton is primarily concerned with harmfulness and whether a defendant can get a fair trial in light of a co-defendant confession which facially incriminates him. Judge Goldberg I thought it was really based on a confrontation right? Judge Stuchin The decision definitely stated that it was based on the confrontation clause. However, there is some indication that if given the opportunity to reconsider the issue, the court would exclude those special evidentiary considerations such as in Bruton on the due process basis. Something has to fill in the vacuum created by Crawford excluding non-testimonial evidence in this fashion because defendants cannot get a fair trial. This is why the court specifically recognized in Bruton that jurors could not be relied upon to make this subtle distinction. It's a special evidentiary consideration. Judge Goldberg Well, in the district court, you objected on the confrontation grounds, not on the due process grounds, right? Judge Stuchin Actually, they objected both on the due process grounds. They cited a Brooklyn Law Review article which basically suggests that Bruton should live on post-Crawford under a due process analysis. So that was raised in the lower court. Judge Goldberg Has any court of record agreed with that in the published decision? Judge Stuchin No, Your Honor. The closest thing that I can get which I cited in my brief was a concurring opinion that Judge Justice Harlan gave indicating that at least as concerns testimonial evidence, he would be prepared to rule that the due process clause would exclude the co-defendant's confession as to the part that indicates . . . that would be more expensive than the confrontation clause itself. Judge Goldberg Well, the due process clause is concerned with the defendant's ability to get a fair trial overall. The Bruton analysis has nothing to do with . . . Judge Stuchin And if the confrontation clause is satisfied, it could nevertheless be unfair? Judge Goldberg Well, we're talking about non-testimonial cases where the confrontation clause is not being satisfied. In those instances, only the due process clause can protect the integrity of the trial as far as the defendant is concerned. Basically, he's . . . Judge Stuchin I don't know why we need a confrontation clause. We can just use the due process clause as some kind of amorphous right that is going to regulate everything. Judge Goldberg There's nothing amorphous about the right to a fair trial and to be convicted based on evidence and not based on rumor, innuendo, or hearsay. Judge Stuchin But you take Judge Pryor's point. If you can imagine a Venn diagram, if the due process clause excludes all of this stuff and the confrontation clause excludes this stuff, then what is this doing? What independent bite does this have? Judge Goldberg There's no doubt that there's some overlapping of constitutional rights, just as . . . Judge Pryor That would be more than overlapping. You'd just be swallowing it, wouldn't it? Judge Goldberg No, sir. I don't agree that that's the case. Judge Pryor Well, where would there be a confrontation problem where there wouldn't be a due process problem under your theory? Judge Goldberg Well, this case is a perfect example of that only because I'm saddled with the Crawford precedent, which as an aside is a poor piece of judicial narrative. Judge Pryor I think that's the flip side, though. The question is if there is . . . are you making coextensive at a minimum confrontation and hearsay and due process, or are you using due process to completely engulf confrontation? Judge Stuchin No. Due process is certainly a broader concept than merely confrontation. Judge Pryor Can I ask you a quick question? You mentioned, you said the closest I can come on this due process analysis is a concurring opinion by Justice Harlan in which he said at least with respect to testimonial evidence, he would be prepared to . . . so now we're back to Judge Pryor's initial question that this evidence isn't testimonial. If that doesn't get you Crawford, it doesn't get you due process under Harlan's analysis. Judge Pryor That's true, but Bruton has nothing to do with the dichotomy between testimonial and non-testimonial evidence. Bruton is not concerned with that at all. It's concerned with the ability of a defendant to get a fair trial, and it specifically finds that . . . Judge Sotomayor Isn't Crawford concerned with that, too? Isn't Bruton concerned with that, too? Judge Pryor Yes, they both are, but Crawford goes off on a tangent of some historical misanalysis of whether evidence is testimonial or not testimonial, scraps the Roberts tests of reliability, and Bruton is neither concerned with reliability . . . Justice Breyer Of course, let's not forget it's the Supreme Court of the United States . . . Justice Kagan It does bind us. Justice Breyer . . . and it binds us. Judge Pryor That is certainly true, but my suggestion is . . . Justice Breyer Whether you agree with it, Crawford, or not. Judge Pryor Yes, but there is certainly other evidence that courts consider . . . Justice Breyer Mr. Chisholm, you're over your allotment now, so . . . Judge Pryor I'd like to address a different issue if I may, and that is . . . Justice Breyer You may not. You've had enough time, but you've saved your rebuttal time. Judge Pryor Okay. Thank you, Your Honor. Justice Breyer Sure. You haven't waived anything? Everything that's in your brief will still be with us under submission? Judge Pryor I understand. Thank you. Justice Breyer Versus Mr. Davidow? Mr. Davidow May it please the Court. We had several issues, and in the limited amount of time, I'm going to try to get to two if I can. Justice Breyer Okay. Mr. Davidow I want to start with the first, and that's the statute of limitations issue in 3282. Justice Breyer Yeah, and this is another one where every circuit to have addressed this would say we don't have a limitations problem here, right? Mr. Davidow No, I disagree with Your Honors because the cases cited by the government related to this have nothing to do with the issues raised in what we've raised before the Court. Justice Sotomayor You mean the application, note application? Mr. Davidow Correct, Your Honor. Justice Sotomayor Isn't it somewhat anomalous that no court has raised the application note to reach the result that you advocate? Mr. Davidow No, I would disagree with Your Honor because all I can find, and we cited it, was the New Mexico case. It was a district court case, and in that case, the analysis that came down from the district court judge was quite favorable. In essence, what happened in that case when we're looking at it, they made the argument, that's the only case I can find where that argument under the application note is made, and the district court judge there says, but for the fact that you are charged with a capital offense and don't have a limitations period, then I'm not going to get to the merits of the application because there has to be essentially a limitations period. Justice Kagan What would be left under your reading of the application note, what would be left of the statutory five-year extension itself? Mr. Davidow A significant amount, so you could double the statutory extension, hence the purpose, and that follows directly in line with the law, and what I'm saying is . . . Justice Alito No, I don't think you understood his question. Let's try again. Mr. Davidow Yes, so on your reading of the application note . . . Justice Kagan Correct. Mr. Davidow It seems to me that it defies common sense because you would render the statute essentially toothless for the cases that 3297 seems designed to reach, that is, instances in which the applicable limitation period, to quote, has already expired. Mr. Davidow If the applicable limitations period expired. We can't not read the after in the application note. So it says before, on, or after. Justice Alito I will grant you that the after does create some surplusage, but, I mean, if you read the text of the statute itself, the plain terms of it make clear that it applies here, it seems to me. Mr. Davidow Well, and I think your difficulty is, and these are the cases that we cited, Your Honor, and I understand Your Honor's review of it, but the cases that we cited, and I'll jump to them, we cited Marion, Toosie, and Bonds, and the issue there in the Martinez case actually cites, which we cited, cited the United States Supreme Court case of Habig and Reitmer, and I'm packing these in for one very simple analysis, and that is that criminal limitation statutes are to be liberally interpreted in favor of, important, repose. Justice Sotomayor But even granted that, aren't you reading out of the application note the words, the date of the enactment of this section, which anchors the whole note? Mr. Davidow This section, if you keep going, if the applicable limitations period has not yet expired. Justice Sotomayor As of the date of the enactment. Mr. Davidow On before or after the date of the enactment, so if we keep cutting out the sentence, now we have nothing. We don't even have a sandwich anymore. We just have, so if you read this in total, and you read the analysis in the New Mexico case that we cited, and the way that that judge came down, and when you say, I'm making it toothless, we're not. It extends it five years within the applicable limitations period. If the applicable limitations period expires, you don't get those five years, and that's how it falls. Justice Sotomayor Isn't the whole point that if the applications period has expired and new DNA evidence arises, then it extends the statute? Mr. Davidow Five years, correct, within the period, so you can get up to ten if the DNA evidence is implicated in the last year of the period. It doesn't render it toothless, it renders it an additional five-year period within it. So you have five more years, and then the whole point of that is just to bring it to indictment. Once indictment's made, it's good forever. So essentially, if you can't get to the indictment once you make implication in the first year, you have six years, second year, seven years, third year, eight years. Justice Kagan We get the point of the arithmetic. Would it be surplusage if we were in a situation in which, for example, the DNA evidence showed up the day after the enactment of the offense, or two days after? I mean, it was right on the cusp, and the after would address those cases that were near enough to the date of enactment, but not so far out as to create the completely, the surplusage that Judge Pryor has described. Mr. David I think if I'm understanding Your Honor's question, we would have to measure the date of genesis. So what's the date that starts tolling? So what's the date that starts running the expiration date? Justice Kagan I don't think I'm making it biblical, but go ahead. But if you start reading the beginning of this, so where the tolling period begins, or where the limitations period begins, this does not eviscerate the date of the offense, the date of the commission of the offense. It does not. It doesn't intend to eviscerate the date of the commission of the offense. So the date of the commission of the offense starts the tolling period, and then for which if DNA evidence is discovered, you get an additional five years. Justice Sotomayor Is your best case, the New Hampshire case that says, I'm not going to consider this on the merits of the argument because I don't need to? Mr. David No, no. I wanted to get to a merits argument. It appears as though I'm running out of time, but Justice Breyer That would be correct, you are, but you can finish your answer. Mr. David And so to get to that, what Your Honor's saying, and I've reserved two minutes in rebuttal, I'll use the rebuttal time. This was a case that was a very, very close call. There was not a substantial amount of evidence, and I'll get into that in my last two minutes. Mr. McDonough Good morning, Your Honors, and may it please the Court. Beginning with the statute of limitations issue, the text of section 3297 does not support Hano's interpretation. Beginning with the text of the codified portion itself, it says in short that the statute of limitations begins to run when DNA evidence implicates someone. What Hano tries to do is to read in an extra step, an extra requirement that simply doesn't appear in the text itself, that additionally that DNA testing has to occur during the original statute of limitations. That simply isn't there. To read that additional step in, he looks to the application note, but the application note doesn't say that either. The application note, you can divide it into two parts. The first part is that the amendments made by the section shall apply for any offense committed before, on, or after the date of enactment. In essence, the statute of limitations applies prospectively and retrospectively. But then the second part puts one qualification on that, and that's if the applicable limitation period has not yet expired. Has not yet expired by when? Well, the only date referenced in the application note, as Judge Rosenthal pointed out, is the date of enactment. To reach Hano's interpretation, you have to read in a separate date that isn't referenced in the application note, has not yet expired when the DNA testing occurs. So this is an interpretation that relies upon implication upon implication, and the result is this two-step process where the statute of limitations will run somewhere between five to ten years. There's very little logic to that sort of statute of interpretations. On the other hand, our reading, which is, it's true that no court has directly addressed this argument, but our interpretation is consistent with the application of every court, at least every circuit court, to have reached the issue. I mean, it makes sense given that Congress, and that the legislative history is discussed and the purpose behind the statute of limitations in some of the cases we cite, that Congress recognized that DNA evidence is uniquely reliable, and its reliability doesn't fade, as does some other evidence. They wanted this to apply to an offense no matter when it was committed, but the Constitution places some limits on that. That's why we supplemented the 28J, the Stagner case. Our interpretation of the statute of limitations, along with the application note, makes it apply as broadly as the ex post facto clause will allow. So it's a result that's both consistent with the text and as a matter of logic makes sense and is consistent with Congress' purpose. There are no questions on that issue. I'll briefly address the Bruton issue. This court got it right, albeit in an unpublished opinion in Rodriguez, which was just a straightforward application of Supreme Court precedent. We agree that Bruton, we agree with RSD as counsel that Bruton's never been overruled, but Bruton dealt with testimonial statement. It was a confession to a postal inspector, and the Supreme Court has subsequently clarified that the confrontation clause applies to testimonial statements, and in this case we're not dealing with a testimonial statement. Is there any court that has framed the issue under the Fifth Amendment due process? Not that I'm aware of, Your Honor. If you've got a testimonial statement, you don't need to take that step, and I understand that. Right. I can't say that there doesn't exist that case with certainty, Your Honor, but I'm not aware of any such case. Certainly, the Eleventh Circuit is not that you know of. Certainly not in the Eleventh, Your Honor. What's your view, just briefly, Judge Pryor, I believe, asked if the Supreme Court if this due process-y argument was raised below, your opponent says, yes, we apprised the district court of this by citing a Brooklyn Law Review article that had treaded this ground. I did not think it had been raised below, but what's your position about that and the Brooklyn Law Review article? It had not. There was a Brooklyn Law Review article submitted to the district court without any real discussion of its contents. Does it make that argument? Does it make this due process argument? Is that the point of the article? Your Honor, I don't recall whether or not it did. I'll take his word that it did, but I would point your honors to the transcripts, document 271 at page 192. RSD's counsel is specifically asked what is the basis of his objection, and he says it's rooted in the confrontation clause. So, whether or not it might have been hidden in this law review article, only the confrontation clause was explicitly made the basis of the objection, and so that's why this court should review that argument for plain error. I would like to briefly address the CODIS issue. The district court . . . What if I go read the article and it's just about due process and I think it's enough to have raised the issue, and let's say we're not reviewing for plain error. We're instead reviewing for harmless error. What then? What would you say? First of all, even if we're not reviewing on plain error, RSD still hasn't made the case that this right should be . . . this court should recognize a right rooted in the due process clause. Even under a plain error standard, one thing we would be able to look at is whether there was . . . if we determined there was no error, we could just stop at the first step, right? Correct. Was there an error if the argument's about due process? No, Your Honor. There's no error. It would be anomalous, as several of you pointed out, to have all this analysis . . . to have the framers create a confrontation clause to deal with this issue and to have courts analyze and frame what that confrontation rights meant for that all to essentially be discarded because there's a much broader right to confrontation in the due process clause. Given that broader right and the expansiveness of it, do you have any . . . again, we're kind of instruction that was given over and over. Would that still be as limited as it is under confrontation? That is, would the instructions serve any more robust purpose to support the legitimacy of the verdict than they do under confrontation analysis? If the courts . . . if this court were to find under a due process analysis . . . How would we treat the instructions? Hard to imagine how we would treat them any different from how we treat them with confrontation. Right. Yeah, I . . . You could never instruct in a way you would just be confronted with a mistrial if you were the district judge trying to do the right thing. I agree with that, Your Honor. It seems like the analysis in Bruton, which hasn't been overruled, would still apply in that context. If due process becomes the same as confrontation or much broader then and therefore at least as robust, then I think you're right, which raises a series of concerns all by itself. Yeah, that would raise a number of concerns, but that's predicated on the idea that there is more expansive right in the due process clause. To find it . . . RSD hasn't articulated exactly why this court should find it in the due process clause. Was it procedural due process? That requires notice and an opportunity to be heard. There's no argument that that was denied here. Is it substantive due process? Well, that ordinarily requires a finding that it was rooted in fundamentals of ordered liberty and there's been no showing on appeal that this is one of those rights, at least this more expansive version of the confrontation clause. For all those reasons under plain error review or no, there was no error here. On the CODIS issue regarding Hanno's attempt to get a copy of Duarte's DNA profile, I just wanted to quickly address the district court . . . I wasn't, Your Honor. If Your Honors have no questions about that issue, I will take that. Whatever new issue you want to present, you can certainly give your opponent an opportunity to then say something about it that you won't have an opportunity to respond to, but that's your call. I think my mind's been changed, Your Honor. If there are no further questions on any of the issues, we will rest on the remaining issues on the arguments in our brief and ask that this court affirm. Thank you. Thank you. Mr. Stuchin. Can I ask you a quick question just as you get started? It is about this interaction between confrontation and due process, which I know is the heart of your argument. It dawned on me . . . this is always dangerous, as I said yesterday, to think out loud, but I'm going to go ahead and do it. In addition just to the logical oddity of confrontation being sort of enveloped by due process in the Venn diagram sense, I actually think that there is a long line of cases, both in the U.S. Supreme Court and in our court, that says for a specific textual guarantee addresses the issue. You do not range beyond that textual guarantee to notions of due process as sort of a safety net. Now, we've typically addressed that in the substantive due process arena. Maybe here we're in something that looks like procedural due process. Maybe we're not. But either way, doesn't the same analysis apply? Like, why is it that if the guarantee that addresses your issue, which is the confrontation clause, if that argument fails, then you get to say, well, never mind that failure. Now I'm going to sort of resort to due process. I mean, I think the Supreme Court and we have said, no, no, no, no, that's not how constitutional law works. I understand your point, Your Honor, but Crawford . . . the answer to your question is that Crawford did not overrule Bruton, and this particular case deals with a non-testimonial statement, and the court has not addressed that. So, it's still open for consideration whether the due process clause applies in that context. But I would like to devote my time . . . Does it matter that, as your adversary says, that Bruton itself involved a testimonial statement? No, because Bruton . . . the whole thrust of Bruton is that it's fundamentally unfair in the due process sense for somebody to be confronted with a facially incriminating statement by a co-defendant when they can't cross-examine that person at a trial. That's the thrust of Bruton. Bruton has nothing to do with the dichotomy between whether it's testimonial or non-testimonial, whether it's reliable or not reliable. It has to do with fairness. That's what Bruton is about, and Bruton was not overruled by Crawford and exists today. In fact, there are many Eleventh Circuit cases after Crawford was decided which still address the Bruton issue. But I'd like to preserve my time . . . Only in testimonials. . . . to deal with the evidentiary question. You can't bring up a new issue on rebuttal. You've got your brief. We understand your case, and we appreciate your argument. Mr. Davidoff. Touching on, and I finished or I attempted to finish when I had stated to the court, the Judge Rosenthal's question prior to going into that, that there was a lack of evidence in the case which related to the other arguments on the brief. And I understand what Your Honor has stated, but the point is we had four really other arguments made. I brought them up that I wanted to reach them in the opening, and that was related to the judgments of acquittal. If Your Honor's foreclosing that opportunity, I understand. And I'll touch on something very simple. All right. And that is . . . Stephanie, let's start off. He had two minutes, not one. And it's true that at the end of your opening argument, you referred to the judgment of acquittal. And I do think that preserved your right to say something more about it because that certainly invited the government to say something about it as well. Thank you, Your Honor. But you're limited to that. Understood. And you've got two minutes. Thank you, Your Honor. And I'll touch upon that quickly and then just really end up with the first argument. And it's very simple, was that the judgment of acquittal, we made an Mr. Bernard Meany. Bernard Meany was the driver. There was never a point in which Mr. Meany had force pressed upon him, was threatened, was threatened with force, was never in fear. In order to sustain a conviction under the Hobbs Act, you have to have some amount of force, some form of violence. What had occurred here was . . . Result from interfering with what's going on with his colleague is enough? Well, what happened with his colleague was a play. It was a show. He doesn't know that. It's true he doesn't know that. But what was shocking at the trial, because I was present there, I was shocked, and I know the government was, is when he asked Mr. Meany, were you in fear? And he said no. Well, he wasn't in fear as long as he stayed inside the area where he was in the cab. But the minute he left that, or attempted to help a colleague who he believed could be in danger of being killed, who he was watching getting hit on the head with the butt of a gun, isn't that when he put in fear? Well, the fear and the threat of fear was not exerted on Mr. Meany. It was. It was. He wasn't physically subjected to it at that moment, but he certainly had the fear of it. Correct. Or watching his colleague be injured even more. Yes, Your Honor. And so when we take that in light of everything else that was in this case and that we put these arguments in, the immigration evidence, Mr. Borrego's testimony, all of those things, there's two pieces. And we cite to that Bonner case in the rebuttal. And I'd ask the courts to look at Bonner, because there was less evidence against Mr. Hanno, in fact, exculpatory evidence, than like Bonner. Finishing, the limitations period, to jump to it if I can, and I'd like Your Honor to reconsider. I think we understood your argument about the limitations period. Thank you, Mr. McDonald. We know that both . . . I mean, Mr. Davidow. We know that both you and Mr. Stuchin were court appointed. We appreciate you accepting the appointment and appearing today to answer our questions. Thank you, Your Honor. And we have your case. Thank you.